UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAM JACOBSEN,                              :
                        Plaintiff,       :
                                    :
              -v-                                   :     12 Civ. 7460 (JPO)
                                    :
NEW YORK CITY HEALTH AND            :     OPINION AND ORDER
HOSPITALS CORPORATION, et al.,         :
                       Defendants.    :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

    *Pro se* Plaintiff William Jacobsen alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("the ADA"); the Fourteenth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; and the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. 651, *et seq.*, together with regulations promulgated by the Occupational Safety and Health Administration. Plaintiff asserts his claims against the New York City Health and Hospitals Corporation ("HHC"); Alan D. Aviles, President and Chief Executive Officer of HHC; Phillip W. Robinson, Senior Vice President of HHC; Vincent James, Plaintiff's supervisor and an HHC employee; Mondo Hall; and the City of New York ("the City"). Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, Defendants' motion is granted.

1

**I.     Background**[1]

    **A.     Factual Background**

Plaintiff William Jacobsen began working for HHC in 1979, and remained employed there for nearly three decades. Plaintiff served as an Assistant Health Facilities Planner until 1982, when he was promoted to Health Facilities Planner. During his tenure at HHC, Jacobsen also held the title of Network Manager. Plaintiff's primary job responsibilities involved reviewing proposals submitted by consultants and hospitals, along with assisting in planning and development of major hospital projects. The "overwhelming majority" of these responsibilities were performed from HHC's corporate offices, and involved duties such as written progress reports. Plaintiff's position required him to work in the field one to two days per week, for four to five hours at a time, to meet with hospital directors, examine existing structures, and supervise the work of consultants. These field meetings generally took place inside offices; however, during his early years at HHC, Plaintiff did inspect asbestos abatement projects. Due to this asbestos exposure, Jacobsen's lungs were permanently damaged, as a result of which he began taking medication for asthma and bronchial dysfunction.

In June 2005, Jacobsen was evaluated by a physician, after which he informed his supervisor, Vincent James, that he was suffering from pulmonary and breathing problems. In August 2005, Jacobsen was permanently assigned to Queens Hospital Center ("QHC"), where he was required to report on a daily basis. Plaintiff attended biweekly meetings at his former

---

[1] The following facts are taken from the Complaint, together with submitted exhibits, and, with respect to allegations in the pleadings, are presumed true. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. In both postures, the district court must accept all allegations in the [non-movant's pleadings] as true and draw all inferences in the non-moving party's favor." (citations omitted)).

2

workplace—the HHC corporate offices—but was primarily assigned to QHC, which was an active construction site. Plaintiff's office at QHC was in close proximity to the ongoing construction activities, and Plaintiff was therefore consistently exposed to airborne dust. An asbestos investigation and abatement contract were also underway during Jacobsen's tenure at QHC.

In September 2005, Plaintiff was diagnosed with pneumoconiosis, an occupational lung disease, by Dr. Gwen Skloot, a pulmonologist. Dr. Skloot provided Jacobsen with a physician's note for his employer, detailing that Jacobsen was suffering from pulmonary disease and would require tests and examinations, and would mandate his occasional absence from work. In October 2005, after an open lung biopsy and as part of a request for medical leave, Plaintiff submitted a certification from Dr. Skloot stating that Plaintiff "should not be exposed to inhaled dust." After submitting this certification, Jacobsen was informed by letter from Mondo Hall, of HHC, that the request for a medical leave of absence had been approved through December 2, 2005. On December 16, 2005 Plaintiff reported to HHC. However, Dr. Skloot had noted in another letter that while Plaintiff was ready to return to work, it was "imperative" that Jacobsen "not be exposed to any type of environmental dust." In January 2006, Plaintiff's union representative sent a letter to HHC requesting that he be permitted to return to work with an accommodation of being assigned work capable of completion from the office, rather than work requiring presence in the field. In March 2006, Dr. Skloot provided another letter stating that Jacobsen was medically cleared for work in the field, and accordingly, Jacobsen returned to work at QHC in March 2006.

From March to May 2006, Jacobsen continued to make field visits, and did not request any further accommodation from Defendants. On May 10, 2006, however, Plaintiff sent a letter

3

to his supervisor, James, and again requested relocation to an office. After determining that Plaintiff's position required him to spend 80% of his time in the field, including visits to construction sites, James informed Plaintiff that visiting construction sites was an essential function of Plaintiff's position. Jacobsen contests this characterization of his position, contending that his position, over the course of decades of work for HHC, entailed a far smaller proportion of field work. On June 6, 2006, HHC informed Jacobsen that he would be placed on unpaid medical leave for six months, and that his job would be left open in case his medical condition improved, claiming that Jacobsen's proposed accommodation—relocation to the central corporate office—was not feasible, given that his position required that he visit facilities where there is ongoing construction.

Also in June 2006, Jacobsen filed a complaint with the New York State Division of Human Rights ("the NYSDHR"), alleging discrimination based on disability and age, in violation of New York State Human Rights Law ("NYSHRL") and the ADA. Later, in March 2007, at the conclusion of Jacobsen's six months of unpaid leave, as his medical condition had not improved, Jacobsen's employment was terminated.

### B.    State Court Proceedings

Plaintiff later brought a state court action against HHC in New York Supreme Court, alleging violations of the NYSHRL and the New York City Human Rights Law ("NYCHRL"). Justice Geoffrey D. Wright, of Supreme Court of New York County, granted HHC's motion for summary judgment, and Jacobsen appealed to the First Department. The Appellate Division affirmed the lower court's decision, determining that "HHC established that plaintiff could not, even with a reasonable accommodation, perform the essential functions of his job." *Jacobsen v. New York City Health and Hosps. Corp.*, 97 A.D.3d 428, 431 (1st Dep't 2012). The court noted

that HHC, through the testimony of Jacobsen's supervisor, James, who explained that "plaintiff's position required him to spend the majority of his time at construction sites," established that Jacobsen could not, even with a reasonable accommodation, perform his job's essential functions. *Id.* In his testimony, James had also stated that "[t]he only way plaintiff would be able to report on construction progress was to be present at the site; therefore, it was not possible for plaintiff to complete his duties from the central office." *Id.* Additionally, Jacobsen's own testimony that he could "perform all his duties from the central office," was belied by the fact that he had "failed to explain how he could monitor the progress of construction and renovation projects, an essential function of his job, from the central office without visiting the sites." *Id.* The court further explained that the record established that, as required by the NYSHRL and NYCHRL, HHC had performed an "individual assessment of [Jacobsen], prior to terminating him," *id.* at 431-32 (citation omitted), highlighting that HHC kept Jacobsen's job open during two medical leaves and repeatedly dialogued with his doctor about his capabilities, *id.* at 432. The court also cited to the fact that "it was only after plaintiff's doctor and plaintiff himself confirmed that he could no longer work at construction sites that HHC terminated him." *Id.*

On appeal to the First Department, Jacobsen also argued that HHC had refused to provide him with adequate respiratory equipment, contending that he could have remained at QHC had HHC provided him with a respirator, rather than an inadequate dust mask. *Id.* The court, however, disagreed, noting that despite arguing that the dust mask was inadequate, Jacobsen had "never made any additional complaints to his supervisor or anyone else about it, nor did he request different equipment than what he was given." *Id.* Moreover, the letters from his doctor and union representative, upon which Plaintiff relied, made "request[s] for relocation to the central office or an environment free of dust[,]" rather than asking "for a respirator so that

5

plaintiff could remain at the Queens Hospital location." *Id.* at 432-33. In sum, the court determined that HHC had interactively engaged with Jacobsen sufficiently under the NYSHRL and NYCHRL, affirming the lower court's dismissal of Jacobsen's case. *Id.*

### C. Procedural Background

Jacobsen filed the Complaint in this action on October 4, 2012. (Dkt. No. 1.) Defendants filed their motion for judgment on the pleadings on January 17, 2013 (Dkt. No. 14), and Jacobsen filed his affirmation in opposition to the motion on March 27, 2013 (Dkt. No. 21). Defendants replied on April 3, 2012 (Dkt. No. 22.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." However, "a party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Bailey v. Pataki*, No. 08 Civ. 8563 (JSR), 2010 WL 234995, at * 1 (S.D.N.Y. Jan. 19, 2010) (quotations and citations omitted) (alteration in original). As noted, "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel*, 259 F.3d at 126 (citations omitted). Thus, courts may not grant a 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1368 (3d ed.1998). In analyzing motions under Rule 12(c), district courts may take notice of "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Piazza*

*v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 677 (S.D.N.Y. 2011) (quotations and citations omitted).

Although "[*p*]*ro se* status does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure," *Payne v. Oldcastle Precast, Inc.*, No. 10 Civ. 887(BSJ), 2012 WL 5873595, at *1 (S.D.N.Y. Nov. 19, 2012) (citations omitted), courts nevertheless read *pro se* complaints liberally and interpret them as raising the strongest arguments they suggest, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**III.   Discussion**

    **A.   ADA Claims**

Jacobsen asserts a claim under the ADA, contending that Defendants failed to reasonably accommodate his medical needs, eventually terminating his employment without any attempt to relocate Jacobsen to the HHC central office. Defendants move to dismiss these claims on several grounds, alleging, *inter alia*, that they are time-barred and that they are precluded by collateral estoppel in light of the New York state court judgments.

An ADA claimant may bring suit in federal court only if he has first filed a timely complaint with the Equal Employment Opportunity Commission ("the EEOC") and obtained a right to sue letter. *Legnani v. Alitalia Linee Aeree Italiane*, *S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). In order to be timely, "a victim of discrimination must file [his] claim within 180 days of the alleged violation unless she has first filed a charge with an appropriate state agency . . . ." *Settecase v. Port Auth. of New York & New Jersey*, 13 F. Supp. 2d 530, 533 (S.D.N.Y. 1998). In the latter circumstance, the victim will instead have "the earlier of 300 days from the date of the alleged violation or 30 days 'after receiving notice that the State or local agency has terminated the proceedings under the State or local law.'" *Id.* (quoting 42 U.S.C. § 2000e–5(e)(1) (Title

VII's provision, which is incorporated into the ADA by virtue of 42 U.S.C. § 12117(a)); *see also Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011) ("To be timely, a charge must be filed within 180 days or 300 days of the date [of the alleged violation], depending upon whether the plaintiff has initially instituted proceedings with a State or local agency capable of granting relief." (citations omitted)); *O'Leary v. Town of Huntington*, No. 11 Civ. 3754, 2012 WL 3842567, at *4 (E.D.N.Y. Sept. 5, 2012) ("Under 42 U.S.C. § 2000e–5, which is incorporated by reference into the ADA by 42 U.S.C. § 12117(a), a plaintiff in New York has 300 days from the date of accrual to file an ADA charge with the EEOC." (citation omitted)); *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 449 (S.D.N.Y. 2000) ("In New York, ADA and ADEA plaintiffs must file a charge with the EEOC within 300 days of the discriminatory act." (citations omitted)). "A claim under the ADA accrues when the plaintiff 'knew or had reason to know of the injury serving as the basis for his claim.'" *O'Leary*, 2012 WL 3842567, at *4 (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)). Termination, much like failure to promote or refusal to hire, is considered a so-called "discrete act," which is "easy to identify," and will accordingly be "barred if not timely filed" with the EEOC. *Valtchev v. City of New York*, 400 F. App'x 586, 588, (2d Cir. 2010) (quotations and citation omitted).

"The time limits under Title VII and the ADA are not jurisdictional and are therefore subject to equitable tolling." *Finch v. NYC Transit Auth.*, No. 09 Civ. 5371, 2011 WL 2708308, at *3 (E.D.N.Y. July 8, 2011) (citations omitted). Courts will apply this doctrine only in limited, "extraordinary circumstances." *O'Leary*, 2012 WL 3842567, at *5. "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has 'proved that the circumstances are so

extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). Generally, circumstances that have been held worthy of the application of equitable tolling are those where the plaintiff has a mental or physical disability, or where he has been misled by a state agency or the EEOC. *See O'Leary*, 2012 WL 3842567, at *5-6 (citing cases). Hardship alone, however, has repeatedly been held insufficient to trigger equitable tolling. *Id.* at *6 (collecting cases where death or terminal illness of a family member and corresponding mental grief failed to constitute "extraordinary circumstances" in the equitable tolling sense). The plaintiff bears the burden of establishing the applicability of equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Another theory that may act as a tolling mechanism for the ADA statute of limitations is the so-called "continuing violation" doctrine; "[u]nder the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Hudson v. Western New York Bics Div.*, 73 Fed. App'x 525, 528 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). In identifying continuing violations, courts in this district generally look to the type, frequency, and "degree of permanence" of the alleged acts constitution the violation. *Dodson*, No. 97 Civ. 3838 (LAP(, 1998 WL 702277, at *3-4 (S.D.N.Y. Oct. 7, 1998) (collecting cases).

Here, Plaintiff filed his complaint with the NYSDHR on June 5, 2006. (*See* Affirmation in Opposition, Dkt. No. 21 ("Pl.'s Opp."), Ex. A.) Accordingly, he is afforded the 300-day period for filing with the EEOC. *See Mark v. Park Ave. Synagogue*, No. 10 Civ. 7578, 2011 WL 3611322, at *2 (S.D.N.Y. Aug. 11, 2011) (discussing the role of the NYSDHR and its interaction

with the EEOC and the resultant affect on the statutory limitations period). The most recent alleged discrimination—Jacobsen's termination—occurred on March 26, 2007. Thus, the latest date by which he could have filed a timely complaint with the EEOC was January 20, 2008, or 300 days from March 26, 2007. Jacobsen alleges that he filed a complaint with the EEOC in June 2012. This date is well beyond the 2008 deadline prescribed by the ADA's 300-day administrative filing period limitation. *Accord Tucker v. MTA*, No. 11 Civ. 5781, 2013 WL 55831 (JPO), at *3 (S.D.N.Y. Jan. 4, 2013) ("Plaintiff alleges that he was constructively discharged on December 1, 2004, but he did not file a charge with the EEOC until March 15, 2011. This is not even close to being within the 300-day administrative filing period." (citation and footnote omitted)). As Plaintiff's EEOC filing was untimely, the question becomes whether an exception that tolls the running of the statutory deadline applies.

In response to Defendants' argument that Jacobsen's ADA claims are time-barred, Jacobsen asserts that the NYSDHR did not make a decision on whether Jacobsen possessed probable cause to sue in state court for two years. Accordingly, Jacobsen's "intention was to attempt to resolve [his] disputes with the defendants at the state level and properly exhaust all state administrative remedies." (Pl.'s Opp. at 3.) Jacobsen explains that he "had no reason . . . to file a claim with the EEOC while litigation was pending in state court." (*Id.* at 4.) These circumstances, while perhaps reflective of the confusing nature of asserting claims under the ADA, do not constitute grounds for equitable tolling. Rather, only the most "extraordinary" of circumstances warrant equitable tolling, and it is the plaintiff's burden to establish not only that his circumstances are such, but also that he exercised diligence in pursuing his legal remedies. *See Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155 (S.D.N.Y. 2010) ("As an affirmative defense, defendants bear the burden of establishing the plaintiff's failure to timely exhaust his

administrative remedies.  Once defendants meet their burden, the plaintiff must plead and prove 'facts supporting equitable avoidance of the defense.'" (citations omitted)).  In sum, the court must consider whether the party seeking equitable tolling "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted).  The Court agrees with Defendants that Jacobsen has failed to establish that he acted with reasonable diligence, within the meaning of the exception, during the several years between his termination in 2007 and his EEOC filing in June of 2012.  Additionally, he cites no extraordinary circumstances warranting tolling.  Moreover, the alleged violation is not one that continues to the present day despite its likely current effects.  *See, e.g.*, *Dodson*, 1998 WL 702277, at *2 ("The mere fact that past discriminatory acts have a present effect on a plaintiff does not mean that plaintiff has demonstrated a continuing violation." (citations omitted)).  Accordingly, Jacobsen's ADA claims are time-barred.

      B.      **Section 1983 Claim**

Jacobsen also asserts equal protection claims pursuant to § 1983, arguing that he was denied a reasonable accommodation and terminated from his employment at HHC as a result of his age and disability.  Defendants contend that these claims are time-barred as well.

In *Wilson v. Garcia*, 471 U.S. 261 (1985), the Supreme Court held, that for statute-of-limitations purposes, "§ 1983 claims are best characterized as personal injury actions," *id.* at 280.  Accordingly, "a state's personal-injury statute of limitations, assuming the state has but one such statute, should be applied to all § 1983 claims." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994).  Where "a state has more than one personal-injury statute of limitations, the state's general or residual statute of limitations for personal injury actions is to be applied . . . ." *Id.*

(citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In New York, the appropriate statute of limitations is three years.  *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." (citation omitted)).  Nevertheless, "[f]ederal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used."  *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (citation omitted).  And "under federal law, a cause of action accrues when the plaintiff 'knows or has reason to know' of the injury that is the basis of the action."  *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993) (quotations and citations omitted).

    Here, the last point at which Jacobsen knew or had reason to know of the alleged violation was March 26, 2007, when he was terminated from his employment with HHC.  Three years from that date was March 26, 2010.  Jacobsen did not file his Complaint in the instant action until October 2012, meaning that this action was commenced well after the three-year limitations period lapsed.  Jacobsen nonetheless argues that he could not bring his equal protection claim within the statute of limitations because of delays originating from his state-law claim filed with NYSDHR.  However, a pending state-level proceeding does not toll the § 1983 statute of limitations.  *See Randall's Island Aquatic Leisure, LLC v. City of New York*, No. 12 Civ. 6039 (CM), 2013 WL 2951945 (S.D.N.Y. June 13, 2013) ("Plaintiffs also cannot argue that the pendency of the state court action suspended the running of the statute of limitations for their Section 1983 claim.  It did not." (citing *Branch v. Guilderland Cent. Sch. Dist.*, 239 F. Supp. 2d 242, 252 n.7 (N.D.N.Y. 2003) (citing *Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977)); *Meyer v. Frank*, 550 F.2d 726 (2d Cir. 1977); *Cancel v. Mazzuca*, No. 01 Civ. 3129 (NRB), 2003 WL

1702011, at *3 (S.D.N.Y. Mar. 28, 2003)). Moreover, Plaintiff has established no circumstances warranting equitable tolling. Accordingly, his § 1983 claim must be dismissed.

      C.      **OSHA Claims**

Jacobsen also alleges violations of OSHA. First, he contends that, in violation of 29 U.S.C. § 654—which mandates that employers provide a place of employment free of hazards and comply with occupational safety and health standards—HHC exposed him to hazardous dusts and asbestos each time he visited a construction site. Despite requesting necessary and proper equipment, Jacobsen claims that he was "never given more than a paper sheet mouth covering" to protect him from dust and asbestos. Second, Jacobsen alleges a violation of 29 CFR § 1910.132(a), an occupational safety and health standard promulgated by the Department of Labor's Occupational Safety and Health Administration, which mandates that employers provide protective clothing and barriers "wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact." Again, Plaintiff contends that the lack of proper protective equipment contributed to his medical condition and violated Department of Labor standards.

"Congress passed OSHA in 1970 in order to reduce the alarming number of personal injuries and illnesses arising out of hazardous working conditions . . . ." *Donovan v. Occupational Safety & Health Review Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983). And while "[e]mployees have been granted specific rights in the investigatory and rule-making stages of the Act, including the right to participate in rule-making proceedings, and the right to request that the Secretary conduct a workplace inspection when employees suspect that a violation has

13

occurred or an imminent danger exists," *id.* (citations and footnote omitted)), employees do not have a private right of action under OSHA, *id.* (citing *Marshall v. Occupational Safety and Health Revie Com'n*, 645 F.2d 544, 550 (2d Cir. 1980)).  Instead, the statutory scheme envisions "that the public rights created by the Act are to be protected by the Secretary [of Labor], and that enforcement of the Act is the sole responsibility of the Secretary."  *Id.* at 927 (citations omitted) (alteration in original); *accord Jelenic v. Campbell Plastics*, 159 F.3d 1347, at *2 (2d Cir. Mar. 13, 1998) ("Jelenic's claim that the union breached its duty of fair representation because it failed to advise him regarding [OSHA] also fails because OSHA does not provide a private right of action." (citing 29 U.S.C. 660(c) and *Donovan*, 713 F.2d at 926)); *Jones v. Staten Island Univ. Hosp.*, No. 04 Civ. 3302 (JG), 2006 WL 2713987, at *1-2 (E.D.N.Y. Sept. 22, 2006) ("[N]either an OSHA violation nor retaliation against an employee for complaining of such a violation will support a cause of action under OSHA by the affected employee.  Accordingly, plaintiff's OSHA claim is dismissed."); *Grasso v. Forrest Edward Employment Servs.*, No. 01 Civ. 3263 (AKH), 2002 WL 989528, at *9 (S.D.N.Y. May 15, 2002) ("[OSHA] does not create a private right of action for damages.  Plaintiff's claims under OSHA are therefore also dismissed." (internal citations omitted)); *cf. Rivera v. Horizon Offshore Contractors, Inc.*, No. 05 Civ. 6500 (HB), 2005 WL 3030841, at *2 (S.D.N.Y. Nov. 10, 2005) ("Plaintiff's first cause of action for negligence includes general allegations that the Defendants breached a variety of state and federal rules and regulations, and specifically mentions that OSHA standards were violated.  This does not mean that Plaintiff's right to relief necessarily depends on federal law.  Insofar as OSHA is concerned, the Plaintiff should be apprised and this may do it, that there is no private right of action under OSHA and thus this claim would not proceed." (citations omitted)).

Accordingly, as OSHA does not provide a private right of action for employees to bring claims in federal court based on alleged violations of its provisions or associated regulations, Plaintiff's OSHA claims must be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED.

The Clerk of Court is directed to close the motion at docket entry number 14 and to close this case.

SO ORDERED.

Dated: New York, New York
        August 28, 2013

_____
J. PAUL OETKEN
United States District Judge